## Commonwealth *v.* Thomas, Appellant.

Submitted April 23, 1970. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

214

reargument refused November 9, 1970.

*Stanford Shmukler,* for appellant.

*T. Michael Mather,* Assistant District Attorney, *James D. Crawford,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE EAGEN, October 9, 1970:

This is an appeal from an order entered in the court below dismissing an action seeking post-conviction relief.

The record discloses the following:

On March 29, 1954, Robert Blocker was shot and killed during a street "gang" fight in Philadelphia. The appellant, Hezekiah Thomas,[1] was one of several youths taken into police custody in connection with the homicide. He was fourteen years of age at the time. Subsequently, Thomas was taken before Judge PROPPER sitting in the Juvenile Court Division of the Municipal Court (later designated the County Court), who, acting as a committing magistrate, ordered Thomas held without bail to await action by the grand jury.[2] Thomas did not have legal counsel during the proceedings.

---

[1] The appellant testified at the "PCHA" hearing that his real surname is "Scott", but that he was known as Thomas.

[2] The only evidence presently available of this proceeding is a notation in the Juvenile Court docket stating that Judge PROPPER held Thomas without bail for the grand jury. At the "PCHA" hear-

Thomas was subsequently indicted for murder in the Court of Oyer and Terminer and General Jail Delivery of Philadelphia County. Two lawyers were appointed by the court to represent him.

On November 3, 1954, Thomas appeared with his counsel before Judge GRIFFITHS in the Court of Oyer and Terminer and entered a general plea of guilty to the murder indictment. Testimony was heard, following which Thomas was adjudged guilty of murder in the second degree and sentenced to imprisonment for a term of 7 to 18 years. No appeal was entered.

In May 1967, Thomas initiated the present post-conviction relief proceedings under the Post Conviction Hearing Act, Act of January 25, 1966, P. L. (1965) 1580, 19 P.S. §1180-1 *et seq.* (Supp. 1970), challenging the validity of his 1954 conviction based on his guilty plea. Counsel was appointed to represent him. After an evidentiary hearing, relief was denied. This appeal then followed.

First, it is asserted that the lower court erred in not invalidating the guilty plea because it "was primarily motivated by an involuntary confession" given to police by Thomas after his arrest, and hence "was not a voluntary plea."

In order to successfully collaterally attack a plea of guilty on such grounds, the defendant must demonstrate: (1) that the pretrial confession was involuntary; (2) that the guilty plea was primarily motivated by such confession; and (3) that he was incompetently advised by counsel to plead guilty, in the circumstances, rather than stand trial. *McMann v. Richardson,* 397 U.S. 759, 90 S. Ct. 1441 (1970).

---

ing, Thomas testified that testimony was not taken before Judge PROPPER. As to the procedure required where a juvenile is charged with murder, see *Gaskins Case,* 430 Pa. 298, 244 A. 2d 662 (1968).

216

In a collateral proceeding such as this, the burden of persuasion rests with the defendant to establish that the confession of which he complains was coerced or involuntarily made. *United States ex rel. Grays v. Rundle*, 428 F. 2d 1401 (1970); and *Commonwealth v. McBride*, 440 Pa. 81, 269 A. 2d 737 (1970).

At the "PCHA" hearing, Thomas testified that following his arrest he was held incommunicado by the police for several days; that during this period he was questioned by teams of detectives for several hours and assaulted by one of his interrogators, as well as by a relative of the deceased, Blocker; that the assault by the police officer consisted of a severe blow to the left eye, which cut the skin and caused bleeding for days; and that the confession was given and signed immediately following this assault, while he was in a state of intimidation and fear.

In contradiction, one of his trial counsel testified that he saw Thomas "soon" after the confession was given, and there was no visible sign of the injury of which Thomas now relates. He also stated that he saw and talked with Thomas on several occasions prior to trial, and in no instance did Thomas complain of his treatment by the police or even hint that the confession was coerced or involuntary. This testimony was corroborated by copious notes which counsel made during these conferences, and Thomas never disputed this testimony of counsel. In addition, during the plea proceedings, which occurred several months subsequent to the date the confession was given, Thomas personally testified and said nothing about the coercion of which he now complains. Also, this testimony was substantially consistent with the contents of the confession.

Under the foregoing circumstances, the lower court did not err in concluding that Thomas' present assertions that the confession was coerced were not credible,

and that Thomas' confession was voluntarily given. Consequently, since the involuntariness of the confession is a prerequisite for relief on the grounds here asserted, the lower court correctly rejected this challenge to Thomas' guilty plea.

The validity of the plea conviction is also challenged because Thomas was not represented by legal counsel at the preliminary commitment hearing conducted before Judge PROPPER. See *Coleman v. Alabama*, 399 U.S. 1, 90 S. Ct. 1999 (1970). As to this, our ruling in *Commonwealth v. James*, 440 Pa. 205, 269 A. 2d 898 (1970) controls.

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

I must dissent from the majority's decision for the same reasons as I set out in my dissenting opinion in *Commonwealth v. James*, 440 Pa. 205, 269 A. 2d 898 (1970).

The Supreme Court's decision in *Coleman v. Alabama*, 399 U.S. 1, 90 S. Ct. 1999 (1970) compels the conclusion that appellant's uncounseled certification hearing was unconstitutional.

Nor is there any justification for the majority's conclusion that *Coleman* is prospective only. Right to counsel cases "have all been made retroactive, since the 'denial of the right must almost invariably deny a fair trial.' See Stovall v. Denno, 388 U.S. 293, 297, 87 S. Ct. 1967, 1970, 18 L. Ed. 2d 1199." *Arsenault v. Massachusetts*, 393 U.S. 5, 6, 89 S. Ct. 35, 36 (1968), holding retroactive *White v. Maryland*, 373 U.S. 59, 83 S. Ct. 1050 (1963). *Coleman* was a direct extension of the Court's holding in *White*. As *White* was held *retroactive*, there is no sound basis for the majority's *prospective* limitation of *Coleman*.

Accordingly, I would remand appellant's case, as was done in *Coleman*, for a determination whether the